Heard April Term, 1879.

CASE No. 764.

J. D. TIBBETTS, AS ADMINISTRATOR OF SARAH MELTON, v. THE LANGLEY MANUFACTURING COMPANY ET AL.

1. The recitals made in a mortgage deed of lands executed during coverture by a husband some days after obtaining a legal seizin, are not admissible in evidence to affect the wife's right of dower in such lands, she not having been a party to the mortgage.

2. After the right of dower has attached, the wife's interest is independent of the husband, and she is no longer a privy in estate with him, and is not bound by his admission, subsequently made, of an agreement at the time of purchase affecting her right of dower. *Cases cited.*

3. A judgment of foreclosure and a sale under proceedings against the hus-

2 G

band alone in his lifetime, do not bar an action by the widow for her dower in the land so sold.

4. The jurisdiction of Probaté Courts in matters of dower, is not limited to cases where no dispute exists as to the right of dower or as to title. *Stewart* v. *Blease*, 4 *S. C.* 37.

5. This court, on appeal, will not disturb the determination of a Court of Probate, whereby it refused to stay the prosecution of an action for dower in that court, until the costs of a former action in a Court of Equity, which had been stricken from the docket, were paid.

6. A widow is not barred of her action for dower by reason of a former action upon the same claim, not prosecuted to judgment. The act of 1744, (3 *Stat.* 612), has no application to cases of dower.

7. Where a widow has a decree establishing her right to dower, with leave to apply for the necessary orders to carry the decree into effect, and dies pending an appeal therefrom, her administrator is entitled to an account from defendant of rents and profits.

8. A widow has a clear right to have her dower assigned to her in the surplus value of lands which were sold for the satisfaction of a mortgage, to which her right was subject, but in respect to which she has made no formal relinquishment. *Per* MAHER, *Circuit judge.*

Before MAHER, J., Aiken, December, 1875.

This was an action instituted in July, 1872, by Sarah Melton, in the Court of Probate for Edgefield county, against eight defendants, each one of whom had in possession a portion of a tract of land of which her husband, Wiley Melton, had been seized during coverture. Wiley Melton died in December, 1865. In October, 1873, the cause was transferred to the new county of Aiken, which included that part of old Edgefield county, in which the land lay.

It appears that a former action had been commenced in 1867, in the Court of Equity for Edgefield district, and that on the dockets of that court there appears the entry made in 1868, "stricken from the docket." There was no other evidence of the proceedings in or disposition of the former action.

The other facts of the case are fully set forth in the decree of Judge Maher, which is as follows:

This is an appeal from the Probate Court in a proceeding for the allotment of dower. Both parties appeal on questions involving the merits. The defendants have presented other grounds, which will first be considered.

The position, that the jurisdiction of Probate Courts in matters of dower can be exercised only in cases where the right is not disputed, and, particularly, when no dispute exists in relation to title, is completely disposed of by the decision of the Supreme Court in *Stewart* v. *Blease,* 4 *S. C.* 37 ; see, also, *Faust* v. *Bailey,* 5 *Rich.* 107.

It is considered quite plain from the provisions of the act of 1871, (14 *Stat.* 695), taken as a whole, that until the organization of the new judicial and election county of Aiken, in October, 1872, the jurisdiction of the Probate Courts of the several counties from which Aiken was formed, remained without change. The proceeding was, therefore, properly instituted in the Probate Court of Edgefield county, and the transfer to the Probate Court of Aiken county was expressly authorized by Section 7 of the act; see, also, act of 1874. 15 *Stat.* 652.

As to the stay of proceedings herein until the payment of the costs of the former suit in equity, the ruling of the Probate judge is affirmed for the following reasons :

1. There is no inflexible rule by which a plaintiff is compelled to pay the costs of a former action before he is suffered to proceed with the second. The rule is intended to prevent vexatious repetitions of actions, and is administered with a view to the circumstances of the particular case and in the exercise of a large and liberal discretion. 2 *Tidd Pr.* 538 ; *Youle* v. *Brotherton,* 10 *Johns.* 363 ; *Miller* v. *Grice,* 2 *Rich.* 27. If the action of the Probate Court in a matter resting in discretion, is not conclusive, it should, at least, not be disturbed without special reasons for the interference of this court, and the case presents no such reasons.

2. It is necessary to the proper application of the rule that the first suit should be at an end, and in such a state that the defendants are entitled to receive and the plaintiff bound to pay costs. *Graham Pr.* 555. The entry, " stricken from the docket," does not necessarily import that the suit was at an end. It might have been restored to the docket on motion. The case may have been struck from the docket because the pleadings were not completed, (*Equity, Rule* 29;) costs could not have been taxed upon the footing of a mere entry of this character. It could not be

considered as a dismissal of the bill, under Rule 33, upon which an execution or attachment for costs would have been authorized, for it does not purport to be such; and, besides, an order of the court was indispensable to terminate the suit, whether by dismissal of the bill or a voluntary discontinuance; without such order costs could not be taxed and the payment thereof be enforced. Moreover, courts of law have not considered the rule applicable when the former suit was in a court of equity. 2 *Tidd Pr.* 1233; 3 *B. & Ad.* 602; *Stebbins* v. *Grant*, 19 *Johns.* 196.

The act of 1744, (3 *Stat. at L.* 612), has uniformly been considered by our courts as confined to the action of ejectment, and its statutory substitute, the action of trespass, to try title. The widow's claim of dower is a mere chose in action, not even assignable at law. *Lamar* v. *Scott*, 4 *Rich.* 516. She cannot enter upon her dower until it is assigned to her, and may be pursued as a trespasser if she tarry beyond her quarantine. *McCully* v. *Smith*, 2 *Bail.* 103. "It is not until her dower has been duly assigned that the widow acquires a vested estate for life, which will enable her to maintain her ejective suit." 4 *Kent* 62. It follows that the act of 1744 has no application to the present case.

In relation to the principal questions to be considered, the facts of the case are briefly as follows: Melton, the husband of the demandant, purchased, during the coverture, a tract of land, parcels of which are now in the possession of the defendants, for the sum of $8000, which he paid in cash, and received a conveyance of the land on December 30th, 1833. On January 18th, 1834, he executed and delivered a mortgage of the same land (with certain exceptions) to Bland, Frazier and Jeter, wherein it is recited that Melton had lately made such purchase for the price stated; that in order to procure a part of the purchase money he had given his note with said Bland, Frazier and Jeter as sureties, payable to the order of one Drake, at the Bank of Augusta, for $6480, the proceeds of which had been actually appropriated in payment of the land; and that it had been explicitly understood and agreed between the said parties that Melton, so soon as he obtained a deed for the land, should execute a mortgage of the same to indemnify and secure said sureties

from any loss they might sustain on account of their securityship, and the premises are thus conveyed by way of mortgage professedly "in pursuance of said agreement, and for the better securing the said Avery Bland, Benjamin Frazier and John S. Jeter from all liabilities on account of said securityship, and in order to indemnify them from any loss which they may sustain as aforesaid." The sureties having been compelled to pay part of the note, brought suit against Melton and obtained judgment for $3759.45, and an order for foreclosure and sale of the mortgaged premises. Avery Bland became the purchaser at such sale for the sum of $7100, which he paid, and received a conveyance from the sheriff, dated May 4th, 1840. The defendants severally hold under him through mesne conveyance. Melton died in 1865—the demandant never relinquishing her dower in the premises.

An agreement to execute a mortgage for specific enforcement, is considered in equity as actually performed before a decree for the purpose. 1 *Story Eq.*, § 649; *Adams Eq.* 135. Such agreement constitutes an equitable lien, which will prevail against subsequent purchasers and creditors with notice. *Dow* v. *Kerr*, *Spears Eq.* 413; *Massey* v. *McIlwain*, 2 *Hill Ch.* 421; *Boyce* v. *Shiver*, 3 *S. C.* 515. If the agreement be entered into prior to the acquisition of the property, it would attach instantly upon the vesting of the title, in preference to the lien of a judgment then impending. *Allston* v. *Bank*, 2 *Hill Ch.* 235. The execution of a mortgage after the time stipulated therefor would not supersede the equitable lien, so far, at least, as its continued recognition might be necessary for the protection of the holder against intermediate encumbrances affected by notice. For this purpose there need be no relation of the mortgage to the date of the agreement, or to the time of the acquisition of the title. A continuous lien, at first equitable and afterwards legal in its nature, would not rest upon the land from the inception of the title.

Whether Melton's agreement with his sureties was in writing or merely verbal, does not appear from the recitals in the mortgage. If, in a suit for specific performance, the agreement had been set forth in the bill in the precise terms recited in the mort-

gage, and Melton had either failed to answer, or, answering, had confessed the agreement without setting up the statute of frauds, the validity of the agreement would have been presumed without further inquiry, and a decree have been made accordingly. And the result would have been the same if the bill had explicitly stated that the agreement was verbal, and Melton, by his course of pleading, had relieved the sureties from the necessity of proving the agreement. 2 *Story Eq.*, § 755; *Reeves Dom. Rel.* 50; 1 *Lead. Cas. in Eq.* 527; 5 *Rich.* 170. "If," says Mr. Justice Story, "the defendant does not insist on the defence, he may fairly be deemed to waive it; and the rule is, *quisque renuntiare potest juri pro se introducto.*" Persons who may have dealt with Melton in respect to the property, intermediately the vesting of the title in him and the execution of the mortgage, would doubtless have good ground to resist the force of any subsequent written acknowledgment of a parol promise as affecting their rights. But certainly creditors holding general liens at the time the title vested, could successfully urge no such objection; and persons deriving interests in the land under Melton, if not in a position to avail themselves of want of notice, would be as effectually concluded as if the writing had been executed at the time the agreement was made. Whether, then, it be presumed that the agreement was in writing, by analogy to the rule in relation to unqualified admission in an answer, or the statements in the mortgage be taken as an acknowledgment of a mere parol promise, the result, it is apprehended, must be the same. It was Melton's privilege to waive the immunity of the statute, and his fulfillment of the promise, though tardy, was an act of honesty and good faith which is to be commended. The same effect must be given to his voluntary act, which would have followed a compulsory decree enforcing a parol agreement confessed by answer, without reliance on the statutes of fraud. The effect of such a decree would have been to set up the agreement as an equitable lien coincident in its origin with the acquisition of the legal title and such, in the judgment of the court, is the equitable view of the transactions between Melton and his sureties. If there had been mention of the agreement in the mortgage, it would not have been admissible to show, by parol evidence, its connection

with any antecedent verbal promise. But the mortgage served the double purpose of supplying written evidence of the previous agreement, and of carrying the same into effect. In the light of established principles of equity, it is conceived that only one view can properly be taken of the case, which is, that there was a valid agreement to execute a mortgage which affected the land as an equitable lien instantaneously upon the delivery of the conveyance to Melton, and that the agreement was afterwards consummated by the execution of the instrument contracted for.

It is a general principle, says Chancellor Kent, that "the wife's dower is liable to be defeated by every subsisting claim, in law or equity, existing before the inception of the title, which would have defeated the husband's seizin." Thus "an agreement by a husband to convey before dower attaches will, if enforced in equity, extinguish the claim to dower." · 4 *Com.* 50 ; 1 *Scrib. on Dow.* 564. In *Allston* v. *Bank,* 2 *Hill Ch.* 235, a remainderman assigned his contingent interest in land to indemnify his accommodation endorser on a note in bank. Before the happening of the contingency on which the estate was limited, a judgment was entered against the remainderman. After the estate vested, a contest for priority arose between the assignee and the judgment creditor. The court held that the assignment, though inoperative as a conveyance, availed as an agreement specifically enforceable in equity ; and, accordingly, that the lien of the judgment attached subject to the equity with which, in the consideration of the court, the estate of the remainderman was burdened at the moment it vested in him. If the question in that case had arisen between the assignee and the widow of the remainderman on a claim of dower, the ground upon which a distinction could have been made in her favor is not apparent. If a prior equity would prevail over the lien of a judgment subsisting at the time the title vested, it seems to me quite clear that the inchoate right of dower, partaking, as it does, of the nature of the husband's estate, would equally be subject to the burden which affected that estate, in the very inception of its origin. In states where the doctrine of the vendor's lien prevails, it has been uniformly held that "when the lien attaches, and so long as it is preserved, it is paramount to the dower of

the vendee's wife." 1 *Scrib. on Dow.* 530, and cases cited in note 3. And yet this lien was considered by Mr. Justice Story "not of so high and stringent a nature as that of a judgment creditor, for the latter binds according to the course of common law, whereas the former is the mere custom of a court of equity, which it moulds and fashions according to its own purposes. It is, in short, a right which has no existence until it is established by the decree of a court in the particular case, and is then made subservient to all the equities of the parties, and enforced in its own peculiar manner and upon its own peculiar principles." *Gilman* v. *Brown,* 1 *Mason* 192; 1 *Lead. Cas. in Eq.* (*Am. note*) 249. If the dower right is subordinated to a lien of this character, for much stronger reason must it yield to an equity which springs from the express agreement of the parties, and is impressed as a specific lien upon the land by its intrinsic force, and not by virtue of the retroactive operation of a decree which originates it. At the time Melton entered into the agreement with his sureties, their claim to be protected by a punctual performance of the obligation was unquestionably superior to that of his wife to be endowed of the forthcoming estate. Without their assistance he would probably not have been able to complete the purchase. The land came to him impressed with this superior equity, and it is but just that the wife's claim of dower should be subjected to it. *Qui sentit commodum sentire debet et onus.* She is in privity of estate with him, and what bound the land at the instant of its acquisition necessarily binds her dower, which is but a part and continuation of his estate. She is estopped, as his privy, from denying the efficacy of his solemn admission, under seal, respecting the agreement with his sureties, and is fully committed to the consequences, which, in the regard of equity, resulted from that admission.

The conclusion is that the demandant's inchoate right of dower attached to the land, subject to the encumbrance of the mortgage.

When the wife relinquishes her claim of dower to a mortgage, in the mode prescribed by the statute, the purchaser under a decree for foreclosure and sale would take a title absolutely, unencumbered of the dower. *Keith* v. *Trapier, Bail. Eq.* 63, 66; *Keckley* v. *Keckley,* 2 *Hill Ch.* 252; *Rickard* v. *Talbird, Rice*

*Eq.* 170. The widow is remitted, in such case, to the surplus proceeds of sale; and her claim thereon will be protected, if the fund remain in the custody or within the control of the court, when her right becomes consummate. *Keith* v. *Trapier, Titus* v. *Nelson,* 5 *Johns. C.* 452.

In *Brown* v. *Duncan,* 4 *McCord* 346, the case was that land had been sold under decree in former suits, for the satisfaction of two mortgages, one of which, having been given for the purchase money, was valid against the claim of dower. The land brought $40,000, and the amount applied to the purchase money mortgage was $8000. Duncan, the purchaser, complied with the terms of sale, and received a conveyance. The proceeds of sale were applied to the mortgage debts, as directed by the decree; afterwards the husband died, and his widow brought suit against Duncan for her dower. It was testified by the commissioner that the land had been sold subject to the contingent right of dower. This circumstance, however, was considered no impediment to a vigorous contention on behalf of Duncan that the widow was not dowable in an equity of redemption, and hence the conclusiveness of the decree and sale thereunder could have been urged with equal propriety. The court, following the principle of *Crafts* v. *Crafts,* 2 *McCord* 54, held that the dower attached, subject to the mortgage for the purchase money, and that the demandant was entitled to dower in the surplus value of the land at the time of the sale. Her right to an allotment *in specie* was explicitly recognized, though the return of the commissioner, assessing a sum in lieu of dower, was confirmed. No question was raised as to the effect of the decree and sale upon the inchoate right of dower, nor did any observation on that point fall from the court. The operation and effect of the act of 1791, and the basis of assessment, were the only subjects of discussion. The case, however, is at least a tacit recognition of the widow's right of dower in the surplus value of land, against a purchaser under decree for foreclosure, when her right, although subject to the encumbrance, had not been formally relinquished. In *Pledger* v. *Ellerbe,* 6 *Rich.* 266, a mortgage for purchase money had been foreclosed in the husband's lifetime, and the defendant held through several mesne conveyances under the

purchaser at the sale. It was conceded by the distinguished counsel for the defendants that the demandant was entitled to her dower " in the excess of the value of the land over the mortgage debt."

But it was objected on the part of the defendant that the deed of the husband was inoperative as a mortgage, it having been attested by only one subscribing witness, and hence that her dower extended to the entire premises. It was so ruled on Circuit, and a verdict was rendered for the demandant accordingly. On appeal, the ruling of the Circuit judge was reversed, on the ground that the widow was estopped, by reason of her privity in estate with the husband, from denying the validity of the mortgage, which had been adjudged valid against him in the proceedings for foreclosure. The court say: "A mere transitory seizin of the husband, for the purpose of re-conveying the land, will abridge the title of dower, and the demandant in such a case takes her dower *cum onere*. If there be any surplus, therefore, after satisfying the mortgage security, she may be endowed of that." A new trial was ordered, and that "the writ do issue to *admeasure* and *ascertain* her dower in any surplus which may remain after paying the mortgage encumbrance." Here, again, the widow's right of dower *in specie*, to the extent of the value of the land in excess of the mortgage debt, was recognized and enforced, without question, against one holding under the purchaser at the foreclosure sale. As the question now under consideration was not distinctly raised, the point cannot be said to have been expressly adjudicated ; but certainly these cases cannot with propriety be lightly disregarded, nor even be considered as without the weight of authority, unless upon examination it should be found that there is no just ground of distinction, as it regards the widow's claim upon the surplus, between mortgages upon which her dower had been renounced and such as are binding upon her without relinquishment.

When the act of 1791 (5 *Stat. at L.* 169) converted what had been known as the equity of redemption into a legal estate, the wife's right of dower necessarily attached as upon a legal and abiding seizin of the husband, although in subjection to the lien of any mortgage which was paramount to that right. But the

right is so subject only to the extent of the mortgage debt. A sale for satisfaction of the debt being a necessary incident of the mortgage, where the encumbrance is valid against her claim, she would of course be bound by a decree for foreclosure and sale. She could set up no right as against the mortgagee, or any one claiming under him, unless she comes to redeem before a sale; when, however, a sale yields a surplus over the mortgage debt, it is demonstrated that the land was more than sufficient in value to satisfy the debt. When the sale is in the husband's lifetime, the wife could urge no complaint that more than a sufficiency of land had been sold, since her claim rests in contingency, and her husband's deed conveyed *his* entire estate for all the purposes of a sale for satisfaction of the debt. To the extent, however, of any excess in value of the land beyond the debt, her right could remain intact; unless, by her voluntary act, she had concluded herself from setting up the claim, such would be the effect of a formal relinquishment in favor of the mortgagee and his assigns. The relinquishment would attend the deed of the husband to the purchaser, as a muniment of title. If, in such case, she retains any right after a sale, it is restricted to the proceeds. The purchaser would have no concern with the disposition of the proceeds. He holds under the parties to the mortgage, namely, the mortgagor, the mortgagee, and the wife herself. But how is the case where the right of dower, though subject to the encumbrance, has not been relinquished in the entire premises? On what grounds could the purchaser oppose her claim of dower in so much of the land as corresponds in value with the surplus proceeds of sale? She has not renounced it; her husband's deed does not affect it; the mortgage debt has been satisfied without it; and the purchaser himself has no pretence of claiming to be protected against it, since he might have regulated his bid with a view to the contingent right.

The surplus proceeds of sale are properly to be regarded as the equivalent of the husband's estate in the land, over and above the mortgage debt. The value of the wife's contingent interest is not included in such proceeds, unless she has relinquished her claim to dower in the entire premises. Where no relinquishment has been made, the dower right remains intact in

the land itself, to the extent of its surplus value, the purchaser having bought such right only to the extent of the mortgage debt. The purchaser holds virtually as assignee of the mortgage, though the wife has no right to redeem. If, after deducting the mortgage debt from the value of the premises at the time of alienation, there should be an overplus, she is entitled to her dower in that. Her right is clear, when, as in the present case, the land sold for a sum in excess of the mortgage debt.

These considerations persuade me that *Brown* v. *Duncan* and *Pledger* v. *Ellerbe*, proceeded upon a conscious recognition of a clear right on the part of a widow to have her dower in the surplus value of land sold for the satisfaction of a mortgage, to which her right was subject, but in respect to which she has made no formal relinquishment.

I own that my impressions at the hearing were decidedly adverse to the conclusions of the Probate Court on this branch of the case. I had always supposed that foreclosure of a mortgage valid, for any reason, against the wife, would bar her claim of dower in the land, absolutely and under all circumstances. The result of a careful examination of the subject is to convince me that the conclusion of the Probate Court on this, as on the other questions raised by the appeal, is correct.

It is adjudged, ordered, and decreed that the decree of the Probate Court be and hereby is affirmed, with costs of the appeal to the demandant.

JOHN J. MAHER.

From this decree both plaintiff and defendant appealed to this court.

Pending the appeal the demandant died. By order of this court, in November, 1877, J. D. Tibbetts, as administrator of Sarah Melton, was made a party plaintiff without prejudice to any right of the defendants, arising from the death of Sarah Melton.

The case was argued at April Term, 1878, and being ordered for re-argument was again heard at this term.

*Mr. J. P. Carroll,* for plaintiff.

The mortgage had no effect until its delivery in 1834, at which time the demandant's inchoate right of dower had attached. 1 *Dall.* 415; 1 *Scrib. on Dow.* 264–266; 11 *Rich.* 417; 43 *Me.* 489; 4 *B. Mon.* 339; 12 *B. Mon.* 261. Relying upon the recitals of the mortgage, the defendants must fail. 12 *Leigh* 264. But the recitals cannot prejudice the demandant. 5 *S. C.* 275; 9 *Rich. Eq.* 513; 9 *Rich.* 50; 12 *Rich.* 363; 1 *Greenl. on Ev.*, §§ 180, 190, 536; 1 *Ad. & El.* 787; *Stark. on Ev.* 328; 2 *Sm. Lead. Cas.* 68, 590; 2 *Scrib. on Dow.* 204–5; 8 *Ohio* 412; 4 *Kent* 51; 8 *S. C.* 100. This is not a mortgage for the purchase money; even if executed the day of purchase it would not prevent dower. 11 *Rich.* 417; 1 *Story Eq. Jur.*, §§ 629, 630. The mortgage having never been foreclosed, the dower remains unimpaired. *Scrib. on Dow.* 533, 558; 5 *S. C.* 213, 461; 2 *Hill Ch.* 252; 1 *Story Eq.*, § 776, 779; 7 *Ves.* 265; 3 *Lead. Eq. Cas.* 80; 2 *Lead. Eq. Cas.* 699.

If the widow is not entitled to dower upon the whole, she undoubtedly is upon the surplus. 1 *Scrib. on Dow.* 476–8; *Bail. Eq.* 63.

Mrs. Melton having died, her administrator is entitled to rents and profits, or to one-third of the interest upon the value at the time of alienation, to be computed from the accrual of her right of dower. 3 *Bro. C. C.* 495, 632; 1 *Fonb. Eq.* 22; *Bail. Eq.* 69; *Dud. Eq.* 127; 1 *S. C.* 124; 4 *S. C.* 9; 2 *Scrib. on Dow.* 696; 1 *Story Eq. Jur.*, § 625.

*Mr. L. F. Youmans,* attorney-general, for defendants.

The demandant in dower is dead, having in her favor a Circuit decree affirming the decree of the Probate judge, which latter decrees the opinion expressed therein, to wit, that she is entitled to dower *in the residue of the value of the land* after satisfaction of the mortgage debt, and that she have leave to apply for necessary orders to carry that judgment into full effect. Dower not being an estate until assigned, and when assigned in the land or the value of the land, being an estate only for life, and she being dead, the authorities cited in the Circuit decree, (4 *Rich.* 516; 2 *Bail.* 103; 4 *Kent* 62,) are conclusive that her

administrator can have no estate in the land or its value, nor can he obtain any account of rents and profits, for the principal failing the accessory goes with it. Indeed, the Probate Court has jurisdiction only in allotment of dower. *Const., Art. IV.,* § 20; *Code,* § 38. And this cannot extend to personal representatives, and no account for rents and profits is attempted to be given thereby. If such right existed even, it could not be prosecuted in this court or in the Court of Probate.

But in support of the exceptions to the jurisdiction of the Probate Court, we rely upon the *Const., Art. IV.,* § 20; *Code,* §§ 38, 40, 146, 276, *subd.* 1; 14 *Stat.* 695; 15 *Stat.* 652; 5 *Rich. Eq.* 350; 10 *Rich. Eq.* 428.

The costs of the former action should have been paid before the institution of this suit, or at least this action should have been stayed until the costs of the former action were paid. 2 *T. R.* 512; 2 *B. & P.* 23; 6 *T. R.* 740, 233; 8 *T. R.* 645; 2 *Strange* 1152; 2 *Sellon Pr.* 144, 450; 3 *Com. Dig., tit.* "*Costs, A,*" 8; 4 *East* 585; *Hullock on Costs* 452.

The statutes of limitation barred the action. 2 *Stat.* 584; 3 *Stat.* 612; 1 *Rich.* 476; *Code,* § 96.

The mortgage was for the purchase money. 1 *Scrib. on Dow.* 261, 262; 11 *Allen* 407; 4 *Kent* 50; 1 *Ham.* 249, 538; 3 *Edw. Ch.* 47; *Lamb. on Dow.* 23; 1 *Leigh* 264; *Bail Eq.* 463; 2 *Hill Ch.* 428; *Spears Eq.* 460, 417; *Bail. Eq.* 223; 2 *Desaus.* 552; 12 *Rich. Eq.* 345; 12 *Leigh* 264; 2 *Ohio St.* 415; 5 *S. C.* 90.

The wife is bound by the recitals of the mortgage. *Co. Litt.* 352, *b;* 6 *Rich.* 271.

The widow is entitled to dower only out of the surplus money after the mortgage is satisfied. 9 *Rich. Eq.* 512; 2 *Hill Ch.* 252; *Rice Eq.* 170; 1 *Scrib. on Dow.* 458–461, 476–478, 521, 522, 532; *Bail. Eq.* 63; 5 *Johns. Ch.* 452; 10 *Paige* 49; 4 *Edw. Ch.* 678.

October 3d, 1879. The opinion of the court was delivered by

HASKELL, A. J. This is a proceeding for the allotment of dower, commenced in the Court of Probate, carried up by appeal to the Circuit Court and thence brought by appeal to this court.

The facts are very fully set forth in the decree rendered by the Circuit judge.

Several important questions are presented in the appeal from that decision. This court, however, is impressed by the preliminary question, upon the determination of which the consideration of several of the other questions depends. We will thus state it: The *prima facie* right of the demandant is established. That is to say, the marriage, the legal seizin of the husband during coverture, his death, and that the wife had not relinquished her right of dower in the land, are facts not disputed. But the defendants by way of defence allege as matters of fact that the husband, within a short time, a few weeks, after the execution and delivery to him of a deed of conveyance of the land, executed a mortgage thereon to secure payment of a part of the purchase money; that this mortgage was executed in pursuance of an agreement entered into before the purchase of the land by the mortgagor and of force at that time; that the mortgage was foreclosed in the lifetime of the mortgagor, the husband, and that they derive through the purchaser at the foreclosure sale. They claim as conclusions of law that such a mortgage for the purchase money is by virtue of the agreement part of the *res gestæ*, and is a right superior to that of dower; and that foreclosure having been had in the lifetime of the husband the land was sold freed and discharged from all right of dower. The facts as above stated are sustained by the findings of the court below. The chief aim, therefore, of the decree by the Circuit judge is to reach the conclusions of law flowing from such facts. The *fact*, however, which must underlie the entire defence is the existence of the "agreement" at the time of the sale and as part of the transaction. We are of opinion that there is no proof in the record of the existence of such an agreement as against the widow. The defendants offered in evidence nothing but the recitals made in the mortgage executed nearly a month after the legal estate had vested in the husband. The wife was not a party to the mortgage deed. The question is, whether such recitals made subsequent to the time when the wife's inchoate right of dower has attached to the land are admissible in evidence against her demanding her dower. The mortgage

was executed to third persons who were not directly parties to the transaction, and there is not a tittle of other evidence to prove the agreement or to connect it with the transaction. It cannot, then, as in the case of *Dutart* v. *Chovin, Riley* 170, be "receivable under the idea of *res gestæ*," but must rest solely upon the credit given to statements made by the mortgagor, in which view, as conceded in *Dutart* v. *Chovin,* "it must according to the rule be clearly inadmissible."

But the conclusion reached by the Circuit judge rests upon the ground that the wife is "in privity of estate" with her husband, and "is estopped as his privy from denying the efficacy of his solemn admission under seal respecting the agreement with his sureties, and is fully committed to the consequences which in the regard of equity resulted from that admission."

It would be difficult to state the general rules on this subject in language more concise or accurate than that found in Greenleaf on Evidence, as follows: "In regard to recitals in deeds, the general rule is that all parties to a deed are bound by the recitals therein which operate as an estoppel working on the interest in the land, if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate and privies in law." *Vol. I.,* § 23.

"The term *privity* denotes mutual or successive relationship to the same rights of property. * * * The ground upon which admissions bind those in privity with the party making them is, that they are identified in interest, and of course the rule extends no further than this identity." *Id.,* § 189.

Can the widow claiming dower be said in this sense to be in privity of estate with her husband? If she cannot, the evidence is mere hearsay and inadmissible.

The inchoate right of dower is said by Mr. Scribner (*Vol. II., p.* 8,) to be "a substantial right, possessing in contemplation of law the attributes of property, and to be estimated and valued as such." And in *Cunningham* v. *Shannon,* 4 *Rich. Eq.* 135, it is defined to be "a right attaching by implication of law, which although it may never be called into effect, * * * yet from the moment that the fact of marriage and of seizin have concurred, is so fixed on the land as to become a title paramount to

that of any other person claiming under the husband by a subsequent act. *Park on Dow.* 256. The estate to which the right of dower attaches comes through the husband, but the right by which it attaches comes through the law.

· Thus the wife is in privity of estate with her husband *quoad* his derivation of estate; that is to say, until the right of dower attaches; but when the right has attached, her interest is independent of him, and is against him. The privity ceases on the concurrence of marriage and seizin. That her right is adverse to her husband would perhaps be an awkward expression, for it cannot be set up against *him,* because it does not consummate until his death; but that it is against his interest and affects his estate is manifest, for it is good against his heir or his alienee, and the assertion of the right constitutes a breach of a covenant of warranty for quiet enjoyment. *Lewis* v. *Lewis,* 5 *Rich.* 12. The wife's right attaches to the estate which was in the husband at the concurrence of marriage and seizin, and in questions to determine that estate she is in privity with him as to all transactions antecedent, but not so as to any subsequent, for the husband and wife are no longer identified in interest. In *Gaunt* v. *Wainman,* 3 *Bing. N. C.* 69, an action for dower, it was argued that the tenant was estopped by the deed under which he claimed title to dispute the nature of the title conferred by that deed. Tindall, C. J., says: "As between the parties to that deed there may be an estoppel, but you set it up against [the wife] a stranger to the deed." In *Foster* v. *Dwinel,* 49 *Me.* 44, in commenting on the above, it is said by Kent, J.: "The ground of this decision seems to be that the wife or widow is not a party or privy to the conveyance. Her claim is by a title paramount and distinct, and therefore she is not estopped." And again: "We have seen that a widow cannot be defeated of her dower by any declarations or recitals of her husband." The case of *Gayle* v. *Price,* 5 *Rich. L.* 525, is not in conflict with this principle. The title under which the defendant held, and he did not attempt to set up any other, was the title on which the widow relied, and the estoppel was reciprocal. But in this case the title under which the defendants claim is the equity arising from an agreement which depends for proof upon a declaration or recital

subsequent to the deed of conveyance under which the widow sets up her demand. The defendants are not estopped from proving such agreement, but there is no estoppel against the widow, as would be if, for instance, such recitals were in a deed indented, to which her husband was a party, and by which he derived title.

No cases directly in point were cited, and we have found none in our own reports, and but little in the text-books, bearing directly on the point in question, but so far as decisions of other courts have been found, they entirely sustain the view already expressed. It is true that the case of *Pledger* v. *Ellerbe,* 6 *Rich.* 266, was to some extent relied on, not by the Circuit judge on this point, but by the counsel for the defendants. We do not, however, consider it as at all sustaining the position attributed to it, and will consider it presently in another connection.

In the leading case of *Greene* v. *Greene,* 1 *Ohio* 244, though the rule of evidence is not in question, the law as to the effect of such agreements is thus expressed: " If it be considered as real estate; it was acquired subject to a condition or agreement that qualified the estate of the husband, and the wife when there is an agreement, *unless it were executed after her right attached,* would be bound thereby, so as to exclude her right of dower." We would remark incidentally that that is really all that is decided in *Pledger* v. *Ellerbe, supra.* See, also, on that subject *Stoppelbein* v. *Shulte,* 1 *Hill* 200 ; *State* v. *Laval,* 4 *McC.* 336, and *Wilson* v. *McConnell,* 9 *Rich. Eq.* 500, showing the effect of the act of 1791, and the change which has occurred since the decision in *Bogie* v. *Rutledge,* 1 *Bay* 312, and *Verree* v. *Verree,* 2 *Brev.* 211, doing away with that idea of instantaneous seizin in the mortgagee which left to the widow only an equitable right, and substituting in its stead the principle that a mortgage for the purchase money, or an agreement to that effect, simultaneous or connected with the purchase, is part of the *res gestœ* and to that extent qualifies the legal seizin of the husband and subordinates the wife's right to the lien thus fixed upon the land. But to return : The recitals in the mortgage unquestionably are, as against the husband and those claiming under him, evidence of an agreement, but being subsequent to the time when the

wife's right attached, she is not thereby bound, for as against her they do not constitute evidence that the agreement was prior to or constituted a part of the transaction of purchase.    When the right of dower has consummated it is a right fixed upon the land, but that right relates back to the time when it originally attached; or, as already said, the inchoate right itself " is so fixed on the land as to become a title paramount to that of any other person claiming under the husband by a subsequent act." Such right is protected by the same rules of evidence as other rights of property.    Thus when dower has attached and the right has become independent of the husband " nothing that he could " (thereafter) " say would be evidence against his wife; her claim is not through him, but in her own right, and altogether independent of him."    *Smith* v. *Scudder,* 11 *Sergt. & Rawle* 325.    That was not a case for dower, but states the rule which we think is applicable.

In *Doe* v. *Webber,* 1 *Ad. & El.* 733, 28 *Eng. C. L.* 191, where a party had by a voluntary settlement after marriage conveyed away his interest in an estate and afterwards executed a mortgage of the same estate; it was held, that declarations, implied or expressed, of the mortgagor made after he had parted with his interest by the settlement were not admissible evidence on behalf of the mortgagee (after the death of the mortgagor) to show that money had actually been advanced upon the mortgage.    The views of the judges were various, but the reason is thus pointedly expressed by Taunton, J.: " I am of opinion that he (the husband) having parted with his interest by the settlement was not competent to cut down that settlement by his declarations afterwards made.    It is not for us to decide what would have been the effect of the evidence if admitted."

It is difficult to perceive any difference in principle between that case and one in which by reason of the marriage and seizin the interest has passed out of the husband by operation of law. He is a party to it by virtue of the marriage, and as much affected as if the interest had gone out of him by a settlement.

It would be even more startling if, by the admission of his subsequent declarations as evidence, he could " cut down " so highly favored legal right.    In *Pinner* v. *Pinner, Barbee's L.*

475, the question fairly arises. The proceeding was by the widow of Wm. Pinner for dower. The other side produced a deed from the husband dated thirteen years before his intermarriage with the petitioner, and by a subscribing witness proved a delivery of the deed a short time before the husband's death, and his declaration that the deed had been delivered many years before. Held that this declaration was no evidence of any previous delivery as against the petitioner. The court, per Nash, Chief Justice, says : "The only testimony upon which the defendant, Nancy, relied to show that the deed was delivered at the time it bore date was the declaration of William Pinner, which was incompetent on that point. The declarations of Pinner before Lanning as to the acknowledgment of the deed were competent as showing a *present delivery,* for it was part of the *res gestæ* then taking place, *but it was no evidence of what had taken place at any time before. The plaintiff did not claim under him but under the law, and he was endeavoring to deprive her of her rights.* So far, then, the declarations of Pinner were incompetent to give the deed an operation before his *then* acknowledgment."

In *Derush* v. *Brown,* 8 *Ohio* 412, a proceeding for dower, it was held that admissions in a deed of release executed by the husband after he had become seized of the land, could not be taken in evidence as against the widow. The court says : " A deed of release from Stearns to the Browns, in which he admits that he purchased the lands in trust for the Browns with their property and as their agent, has also been introduced. To the incompetency of this testimony the counsel for complainants objects and insists that such admissions, made either by parol or by deed, cannot operate to defeat a widow of her dower, and of this opinion are the court. It is true that the right of the widow to dower is derived from the husband, and in a certain sense she may be said to claim under him. But in some respects her interests are adverse to his. By the marriage and seizin of the husband she acquires an interest in the land of which he cannot divest her. He cannot do it by deed of conveyance, and it would be strange if he could by parol declarations. Declarations made by the husband while contracting for the land or at the

time of purchase may with propriety be proven; but declarations made subsequently must be excluded."

The meaning is that if the trust had been proven the right of dower would never have attached, and that it might have been proven by declarations of the husband, which constituted a part of the original *res gestæ*, or by other evidence, but not by subsequent declarations of the husband, which, if admissible in evidence, would thus enable him at any time to deprive his wife of dower.

Regarding it, therefore, as settled that the wife, as respects her dower, is not in privity with her husband in any transactions subsequent to the concurrence of marriage and seizin, to which she is not a party, the general rule of evidence must govern, and on that the current of authorities is unbroken. *Sims* v. *Saunders*, *Harper* 374; *Newman* v. *Milbourne*, 1 *Hill Ch.* 10; *Smith* v. *Asbell*, 2 *Strob.* 141; *Ruff* v. *Thomas*, 2 *Spears* 601; *Land* v. *Lee*, 2 *Rich.* 168; *Kittles* v. *Kittles*, 4 *Rich.* 422; *Renwick* v. *Renwick*, 9 *Rich.* 50; *Raiford* v. *French*, 11 *Rich.* 370; *Adams* v. *Lathan*, 14 *Rich. Eq.* 304. The declarations must be made prior to the *res gestæ* or be part thereof; and as to what constitutes part of the *res gestæ* it is said in *Haynes* v. *Rutler*, 24 *Pick.* 242, and approved in *Adams* v. *Lathan*, *supra:* "If a declaration is in itself a fact in the transaction, or is made by a party while doing an act, and serves to explain it, it is to be received in evidence as a part of the *res gestæ*. But a recital of past transactions is not admissible, *although it may have some relation to the act which the person may be doing at the time when he makes the declaration.*" *Greenl. vol. I.*, § 110.

That the mortgage deed was admissible in evidence is unquestionable, and it proved that the recital had been made, but not the fact which the recital alleges.

Stress is laid upon the effect of the foreclosure. "Judgments and decrees of courts of competent jurisdiction directly on the point in controversy are admissible in evidence not only between the parties, but all persons standing in the relation of privies in blood, in estate or in law. And I understand by privy one whose interest has been legally represented at the trial." *McMillan* v. *Brown*, 2 *Hill Ch.* 457.

The wife was in no sense a party to the proceeding for foreclosure; nor, according to the views already expressed, can it be said that her interest was "legally represented at the trial." The "relationship as to the same rights of property"—between the husband and the widow demanding dower, and the identity of their interest—cease at the moment that the right of dower attaches, for the interest of the wife is thenceforth freed, is independent of that of the husband and is adverse to it. That the foreclosure was had in the Court of Common Pleas in the exercise of its power under the act of 1791, thus becomes an immaterial question; the conclusion would be the same had the proceedings been in the Court of Equity in the exercise of its comprehensive jurisdiction.

The case of *Pledger* v. *Ellerbe*—already referred to—does not aid the defendants, for the circumstances are essentially different. The act of the husband which there worked the estoppel was admitted to have been a part of the *res gestæ*. The instrument called a mortgage was given by the husband to the vendor at the time of the sale to secure the purchase money, and whether or not duly attested, was at least an agreement, and was part of the transaction by which the seizin was acquired. That fact was admitted. Whatever the husband did, in the transaction of purchase, affecting the seizin, was binding on the wife, for her right of dower attached to the seizin thus qualified or encumbered. His agreement could have been specifically enforced in equity, and the wife would have been bound, for the decree would have determined a fact in the *res gestæ* by which the seizin came to the husband, and to that extent she is in privity with him. None the less is she bound when by the husband's assent to foreclosure he admits what would have compelled specific performance, and thus merely dispenses with unnecessary circuity of action. Such acquiescence on the part of the husband is not an act or declaration, subsequent to the seizin, affecting the right to dower, but is an act on his part solely affecting a proceeding at law or in equity, arising from an *act in the res gestæ*, on which her right depends, and which right could have been in nowise changed or altered by the difference in the mode of procedure. We, therefore, entirely concur in the conclusion reached in

*Pledger* v. *Ellerbe*, and deem it in no sense in conflict with the views entertained in this case.

For the reasons above stated it follows that the widow's right of dower was not affected by the mortgage, and that she is therefore entitled to dower in all the land in question.

As to the other points raised by this appeal we are satisfied with the conclusions reached by the Circuit judge for the reasons which he has given, and we deem it unnecessary to add anything to what he has said.

Since the case has been pending in this court the demandant has died, and, by an order of this court, J. D. Tibbetts, as her administrator, has been made a party, without prejudice to any right of the defendants arising from the death of the demandant. It is now contended that as dower is but a life-estate, and there has been no decree for an account of the rents and profits, and no appeal from the decree on account of such omission, the proceeding is necessarily at an end. We think it is clear, from the decision rendered in *Keith* v. *Trapier, Bail. Eq.* 63, and the authorities therein cited, that where the widow has made her demand of dower, but dies before her right has been established, equity will decree an account for rents and profits in favor of her personal representative. But in this case the Circuit judge affirmed the decree of the Court of Probate, which not only established the widow's claim of dower, but gave leave to apply for the necessary orders to carry the decree into effect. Under that decree we see no reason why the widow, or her administrator after her death, might not apply for an account of the rents and profits, which, in this case, will be represented by the interest on the value of the dower assessed in accordance with law. *Gen. Stat.* 530, § 7.

The important question so thoroughly discussed by the Circuit judge does not, under the view which we have taken, arise in this case, and therefore has not been considered.

The judgment must be modified in accordance with the views herein expressed, and the case is remanded for such further proceedings as may be necessary.

Decree modified.

WILLARD, C. J., and McIVER, A. J., concurred.